UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY KYLE PRINCE,

      Plaintiff,                Case No. 5:23-cv-10405
                                    District Judge Judith E. Levy
v.                               Magistrate Judge Anthony P. Patti

KIM FARRIS, *et al*.,

      Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 19), DENY MDOC DEFENDANT MCKINNEY'S MOTION FOR SUMMARY JUDGMENT (ECF No. 52), and DENY WELLPATH DEFENDANT FARRIS'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (ECF No. 64)

**I.     RECOMMENDATION**:  The Court should **DENY** the MDOC

Defendants' motion for summary judgment on the basis of exhaustion (ECF No.

19), **DENY** MDOC Defendant McKinney's motion for summary judgment (ECF

No. 52), and **DENY** Wellpath Defendant Farris's motion for summary judgment

for failure to exhaust administrative remedies (ECF No. 64).

**II.     REPORT**

    **A.     Background**

Timothy Kyle Prince is currently located at the Michigan Department of Corrections (MDOC) Earnest C. Brooks Correctional Facility (LRF).  (ECF No. 15.)  In February 2023, while located at the MDOC's Macomb Correctional Facility (MRF), Prince filed the instant lawsuit concerning the alleged events of July 2022 at MRF.  (ECF No. 1, PageID.2, 11.)  Of the fifteen listed Defendants, two have been terminated, nine have appeared (Farris, Simmet, Perry, Sheffield, Frangedakis, Brown, Hernandez, Droste, and McKinney), two have been identified but have yet to appear, although service of process is ongoing (Tate and Michalowicz), and two (John Does #1 and #2) remain unidentified.  (*Id.*, PageID.1-7; *see also* ECF Nos. 17, 41, 50, 58, 67, 69.)

## B.     Pending Motions

Currently before the Court are three dispositive motions filed by the nine the parties who have appeared:

1.     MDOC Defendants Droste, Sheffield, Simmet, Hernandez, Brown, Perry, and Frangedakis's motion for summary judgment on the basis of exhaustion (ECF No. 19), as to which a response and a reply have been filed (ECF Nos. 22, 24);[1]

2.     MDOC Defendant McKinney's motion for summary judgment (ECF No. 52), as to which a response and a reply have been filed (ECF Nos. 54, 57); and,

---

[1] After the MDOC Defendants filed their June 15, 2023 reply (ECF No. 24), Plaintiff filed two additional matters (ECF Nos. 28, 31); however, for the reasons stated in the Court's related orders (ECF Nos. 29, 34), these filings will not be considered.

2

3.      Wellpath Defendant Harris's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 64), as to which a response and a reply have been filed (ECF Nos. 66, 68).

These motions are ready for decision.

## C.      Discussion

### 1.      Plaintiff's factual allegations

Plaintiff alleges that, on July 16, 2022, he underwent a complete hip replacement at Henry Ford Hospital in Jackson County, Michigan, he "was moved from the hospital bed to the transportation van via a wheelchair[,]" and was returned to MRF on **July 18, 2022**.  (ECF No. 1, PageID.12, ¶¶ 1-3.)  Plaintiff was transported by wheelchair from the van to the nurses' intake station for a "mandatory medical assessment/evaluation to determine Plaintiffs' post[-]surgical treatment plan, because he was clearly unable to walk."  (*Id*., ¶ 4.)

Plaintiff contends that Defendant John Doe #1, Wellpath Defendant Farris, and/or Defendant John Doe #2 consulted, and "it was determined . . . that, because Henry Ford Hospital didn't send Plaintiff back to MRF . . . with a wheelchair, he must not need one[.]"  (*Id*., PageID.12-13 ¶¶ 5-7.)  Moreover, Plaintiff contends these Defendants made this determination, because requiring a wheelchair "would also require medical accommodations for a[n] ADA compliant cell and the use of elevator to get to that cell in a wheelchair[,]" yet, Plaintiff was provided "a wheelchair to return to his assigned cell from the medical intake station . . . ."  (*Id*.,

PageID.13 ¶ 8.)  Plaintiff was assigned to Unit 4, which is comprised of four wings (A-D), of which C-wing is "designated as a handicap wing with ADA compliant cells a[cc]essible by wheelchair dependent prisoners elevator." (*Id.*, ¶ 9.)  John Doe #1, Wellpath Defendant Farris and Defendant John Doe #2 "authorized and/or permitted Plaintiff's confinement to a non-ADA compliant cell on B-wing, which required using a nine-step flight of stairs to get up and down." (*Id.*, PageID.13-14 ¶ 10.)

Upon discovering that he was being housed in Unit 4's B-wing in a non-ADA compliant cell, Plaintiff "quickly informed the housing unit staff on both 1st and 2nd shift . . . [,]" namely Simmet, Perry, Sheffield, Frangedakis, Brown, Hernandez, Droste and others that "he required a wheelchair to get places and, therefore, could not possibly walk up and down the stairs safely, let alone at all." Nonetheless, "they made him do it anyway for two days" – seemingly **July 18-20, 2022** – "threatening to place him in segregation if he 'didn't get his ass up the stairs.'" (ECF No. 1, PageID.14 ¶ 12.)  Non-party Sgt. Qualls called the 1st shift command to report that Plaintiff needed to be "on C-wing in a[n] ADA complaint cell" and to use "the handicap elevator for his wheelchair[,]" but St. Qualls request was denied, presumably by MDOC Defendant McKinney (John Doe #5). (*Id.*, ¶ 13.)  According to Plaintiff, Defendants Simmet, Perry, Sheffield, Frangedakis,

Brown, Hernandez, Droste and others "watch[ed] with deliberate indifference to Plaintiff's pain and suffering." (*Id.*, PageID.14-15 ¶ 14.)

On **July 20, 2022**, Plaintiff received medical details for an ice pack, crutches, and a wheelchair. (ECF No. 1, PageID.44; *see also* ECF No. 22, PageID.161.) Plaintiff alleges he suffered "without post operative pain meds prescribed by specialists at Henry Ford Hospital," and he further contends that "Defendant Farris and Defendant John Doe #2 refused to prescribe adequate pain meds to relieve his suffering[.]" (*Id.*, PageID.15 ¶ 15.) As a result, Defendant Brown misconstrued and exaggerated Plaintiff's agony, which resulted in a major misconduct and placement in segregation – which seems to have occurred on **July 21, 2022** (*see* ECF No. 60, PageID.319) – although it was later determined that Defendant Brown falsified the misconduct report, which was ultimately dismissed. (ECF No. 1, PageID.15 ¶¶ 15, 16.) Meanwhile, Plaintiff remained in segregation "in a shower cage for three hours in excruciating pain." (*Id.*, ¶ 16.) Afterward, MDOC Defendant McKinney said Plaintiff "must be confined to a non-handicap cell." (*Id.*, PageID.15-16 ¶ 17.)

Plaintiff was placed in Cell #14, "a regular non-handicap cell with a pair of crutches and told to make the best of it." (*Id.*, PageID.16 ¶ 20.) At one point, he had to have "an emergency bowel movement," and, despite pleading with Defendant Tate or Defendant Michalowicz (John Does #6 or #7) for "help to get

5

onto the toilet," one of them "laughed and said, 'you better figure out something else before you shit on yourself.'" (*Id.*, ¶¶ 21-22.)  In the process of attempting to "lower his pants and underwear so that he could sit on the toilet[,]" and without the use of "needed handicap rails available in all ADA-complaint cells," Plaintiff fell, tearing apart his surgical wound.  (*Id.*, PageID.17 ¶ 24.)  Plaintiff screamed for Defendants Tate and Michalowicz to get him "emergency medical help[;]" however, notwithstanding their two security rounds, "during which time they directly observed Plaintiff on the floor and heard his pleas for help," they deliberately ignore[d] Plaintiff's serious medical needs."  (*Id.*, ¶¶ 27-28.)  Plaintiff remained on the floor in that condition for approximately 90 minutes, until "a prisoner porter with integrity" responded and reported the emergency to Defendants Tate and Michalowicz, "who were then compelled to respond or risk exposure to a supervisor by the credible porter."  (*Id.*, PageID.17-18 ¶ 29.) Plaintiff was rushed to Henry Ford Hospital Macomb, where he stayed for two days, seemingly **July 21-22, 2022**.  (*Id.*, PageID.18 ¶ 30.)  The hospital specialists "immediately emailed MRF medical staff[,] mandating that Plaintiff be placed in a[n] ADA-handicap compliant cell and be provided the pain meds ordered."  (*Id.*, ¶ 31.)

Plaintiff returned to MRF on **July 23, 2022**, and he was placed in an ADA-compliant handicap cell on C-Wing in Housing Unit Four and provided use of a

handicap-accessible elevator.  (ECF No. 1, PageID.18 ¶ 32.)  An infection

developed in his surgical wound, which he "reported to every medical staff at the

medication line, to no avail."  (*Id*., ¶ 33.)  Plaintiff did not receive help until two

days later, presumably **July 25, 2022**, when he showed Defendant Sheffield the

wound.  (*Id*., ¶ 34.)  Defendant Sheffield reported it, and MRF medical staff "took

a swab of the infection and sent it out to the labs for identification[,]" yet, MRF

medical staff did not "return to inspect the growing infection" during the two days

it took to get lab results.  (*Id*., PageID.19 ¶ 35.)  Questioning why he was not taken

directly to the hospital, where lab results would have been quicker, Plaintiff states

that, "when the swab results returned two days after initially taken," seemingly

**July 27, 2022**, the situation was "urgent," and he was taken to Henry Ford

Macomb, where "a pick-line had to be in[s]erted into his arm near his armpit and

r[u]n directly into his heart to save his life."  (*Id*., ¶¶ 36, 37.)  After one day at

Henry Ford Macomb, Plaintiff spent five days at Henry Ford Jackson – presumably

**July 28, 2022 to August 1, 2022** – after which he was transferred to the MDOC's

Duane Waters Health Center (DWH), "where he remained for about 10 weeks . . .

."  (*Id*., ¶ 38.)  On **August 4, 2022**, he received a medical detail for a rollator; and,

on **October 6, 2022**, he received a medical detail for a walker.  (ECF No. 1,

PageID.44; *see also* ECF No. 22, PageID.161.)

Plaintiff contends "[a]ll of this could have been avoided had plaintiff simply been provided a handicap cell when he initially returned to MRF from Henry Ford (Jackson) after the hip replacement surgery." (*Id*., ¶ 39.)  His complaint alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  (ECF No. 1, PageID.10.)

### 2.    Exhaustion of available administrative remedies

In each of the pending dispositive motions, Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to his claims against them. (ECF No. 19, PageID.100-101; ECF No. 52, PageID.290-291; ECF No. 64, PageID.341-346.)[2]  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA's exhaustion

---

[2] In one of his responses, Plaintiff contends that "not one of the . . . Defendants in this case has denied violating Plaintiff['s] rights[,]" and "[i]t is clear that [his] rights were in fact violated . . . ."  (ECF No. 66, PageID.358.)  In another, Plaintiff argues that, "due to the intimidation [and] the obvious assault and deliberate indif[f]erences[,]" he "has shown cause for the courts to continue on with this case to jury trial."  (ECF No. 22, PageID.145.)  In yet another he claims "this lawsuit is about cruel and unusual punishment not grievance [procedures][.]"  (ECF No. 54, PageID.300.)  However, to be clear, the *merits* of Plaintiff's claims are not currently before the Court; only the question of whether he exhausted his available administrative remedies will be considered at this juncture.

requirement . . . requires 'proper' exhaustion, which includes compliance with a state agency's timeliness deadlines." *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  Nonetheless, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016).

### a.    MDOC prisoner Step III grievance report

The MDOC's grievance procedure explains that "[c]omplaints filed by prisoners regarding grievable issues . . . serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy."  MDOC PD 03.02.130 ¶ C (Mar. 18, 2019).  (ECF No. 19-2, PageID.105.)  The MDOC Defendants argue that Plaintiff has not exhausted any of his grievable claims against them, because he "did not pursue any Step III grievances arising out of MRF."  (ECF No. 19, PageID.100-101; *see also* ECF No. 52, PageID.290-291.)  In other words, they argue that Plaintiff "did not *properly* exhaust his claims . . . ."  (*Id*. (emphasis added).)  Similarly, Wellpath Defendant Farris contends Plaintiff failed to file any grievances against her through Step III.  (ECF No. 64, PageID.339.)

As of March 22, 2023, *i.e.*, the month after Plaintiff initiated this lawsuit, Plaintiff's MDOC Prisoner Step III Grievance Report listed only five grievances pursued through Step III, of which one concerned the MDOC's Carson City Correctional Facility (DRF), three concerned the MDOC's Marquette Branch Prison (MBP), and one concerned the MDOC's Charles E. Egeler Reception & Guidance Center (RGC).  (ECF No. 19-3, PageID.116-117.)  Considering that none of the grievances Plaintiff pursued through Step III were assigned an MRF grievance identifier number, Defendants correctly note that, based on this report, Plaintiff "ha[s] not pursued any grievances through Step III arising out of MRF." (ECF No. 19, PageID.93; *see also id*., PageID.100.)  The conclusion that these five grievances do not operate to exhaust Plaintiff's claims is buttressed by the grievances' timing or content, namely:  (a) four were received at Step I from October 2017 to August 2021, which predates the alleged events of July 2022 at issue in this lawsuit; and, (b) the grievance received at Step I on August 1, 2022 (RGC-22-08-1312-03B) concerns a July 26, 2022 incident, but it stems from having experienced a jolt after touching a light switch, which Plaintiff concedes "has nothing to do with this case . . . ."[3]  (ECF No. 19-3, PageID.116-117, 121; ECF No. 22, PageID.143.)

---

[3] Plaintiff admits that this grievance () "has nothing to do with this case . . . ." (ECF No. 19-3, PageID.116; ECF No. 22, PageID.143.)

###### b.   Plaintiff's verified pleading

Plaintiff signed his complaint "under the penalty of perjury . . . [,]" (ECF No. 1, PageID.28-29); therefore, it constitutes an unsworn declaration.  28 U.S.C. § 1746.  Within his verified pleading, Plaintiff contends that two of his grievances were rejected and the others "were never processed by the Grievance Coordinator[,]" (ECF No. 1, PageID.24), in support of which he attaches the following:

- On July 23, 2022, Plaintiff completed a grievance form regarding a July 20, 2022 incident, but it was not received at Step I until August 2, 2022 – *i.e.*, 10 days after it was purportedly completed.  In any event, it was rejected as untimely on August 8, 2022.  (ECF No. 1, PageID.33-35 [MRF-22-08-1637-28E].)

- On July 24, 2022, Plaintiff completed a grievance form regarding a July 20, 2022 incident, but it was not received at Step I until August 19, 2022 – *i.e.*, 26 days after it was purportedly completed.[4]  In any event, it was rejected on September 4, 2022 as vague, seemingly because it did not contain names.  (ECF No. 1, PageID.30-32 [MRF-22-08-1794-28B].)

- On July 24, 2022, Plaintiff wrote to the MRF grievance coordinator regarding "replacement grievance that needs to be filed . . . [,]" whereby he asked that "inadequately written" grievances "be pulled and replaced with the four newly and

---

[4] On August 19, 2022, Plaintiff wrote to the MRF grievance coordinator regarding "failure to process previously filed grievances on [July 24, 2022][,]" asking that he/she "either process [Plaintiff's] grievances or explain why [he/she is not] processing [his] grievances[.]"  (ECF No. 1, PageID.42; *see also* ECF No. 22, PageID.159.)

correctly written enclosed grievances[.]"  (ECF No. 1, PageID.43.)  The "replacement" grievances grieve:  (i) Farris and John Does #1 and #2; (ii) Simmet, Perry, Sheffield, Frangedakis, Brown, Hernandez, Droste, and John Does #1-#3; (iii) seemingly John Doe #5, (*i.e.*, MDOC Defendant McKinney); and, (iv) perhaps John Does #6 and #7 (*i.e.*, Defendants Tate and Michalowicz).  (ECF No. 1, PageID.36-40.)

- On August 24, 2022, Plaintiff completed a grievance form against the MRF grievance coordinator regarding an August 19, 2022 incident.  (ECF No. 1, PageID.41.)

(*See also* ECF No. 22, PageID.149-158, 160 [Exhibits to Plaintiff's Response].)

When asked to discuss his efforts at appealing these decisions, Plaintiff explains that he "sent letters to MRF's Grievance Coordinator requesting Step II appeal forms for grievances listed as Attachments C-G[,]" seemingly referring to the four "replacement grievances" and the one against the grievance coordinator (*see* ECF No. 1, PageID.36-41), and he further explains:

> I also sent a copy of each Step I grievance to the MDOC Director's Office along with a letter explaining that said grievances were not processed by the grievance coordinator who also refused to send me the requested Step II appeal forms. I also wrote MRF Warden seeking his help to get said grievances processed.

(*Id.*, PageID.25.)

### c.   MDOC Defendants Droste, Sheffield, Simmet, Hernandez, Brown, Perry, Frangedakis, and McKinney (ECF Nos. 19, 52)

In response to the MDOC Defendants' motion, Plaintiff contends that MRF officials have "obstructed the grievance process by failing to reply to Step I grievances and request[s] for repl[ie]s."  (ECF No. 22, PageID.134; *see also id.*, PageID.137-138.)

### i.   *Alexander v. Calzetta*, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019)

In their reply, the MDOC Defendants rely on a prior decision of this Court, one which overruled a plaintiff's objection that there was "credible evidence that [he] submitted the disputed grievance[.]"  *Alexander v. Calzetta*, No. 16-CV-13293, 2019 WL 1011106, at *3 (E.D. Mich. Mar. 4, 2019) (Goldsmith, J.) (*adopting report and recommendation of* Patti, M.J.).  (ECF No. 24, PageID.169-170.)  Yet, that decision followed "an evidentiary hearing regarding exhaustion of Alexander's claims against certain Defendants[,]" *Alexander*, 2019 WL 1011106, at *1, at which grievance officials and the plaintiff testified and after which the Undersigned concluded "[t]here [wa]s no credible evidence that Plaintiff submitted the Disputed Grievance[.]"  *Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *3, *8 (E.D. Mich. Nov. 30, 2018) (Patti, M.J.).  Defendants cite *Alexander* for the proposition that "a 'goldenrod' copy of the Step I grievance— which did not have any indication that it had been received by the MDOC—was

13

'proof that a prisoner wrote a grievance' but 'isn't proof the prisoner filed a grievance[.]'" (ECF No. 24, PageID.169-170 (citing *Alexander*, 2019 WL 1011106, at *5).)  However, the adopted report and recommendation in that case made clear that the Court's credibility finding, *as to that particular plaintiff*, was based upon the "totality of the testimonial and documentary evidence presented and inconsistencies in the facts and testimony, including Plaintiff's own *self-proclaimed pattern and practic*e."  *Alexander*, 2018 WL 8345148, at *8-*9 ("Plaintiff also admittedly has, in the past, used an old appeal form with a different grievance identifier number on it when he has not received a response to meet the appeal deadlines, but he did not do so in this case.  . . . The unlikely scenario of him taking no such steps on this occasion, in light of his knowledge and history, further undermines the credibility of his narrative.") (italics added, underscoring in original).  In other words, *Alexander* was decided largely on certain case-specific inconsistencies, based on fact patterns not shown here.  And, it should be noted, the Court in *Alexander* had previously found that there was a question of fact and thus *denied* the related exhaustion motion in the first instance, only holding an evidentiary hearing sometime later because the magistrate judge had recommended it for resolution of the issue of exhaustion of particular claims and the district judge adopted that recommendation as to the surviving related claims.  *Alexander*, 2018 WL 8345148, *3.  However, no such recommendation is made here, and, in the

14

context of summary judgment motions, "such hearings usually are not appropriate"

under Fed. R. Civ. P. 43(c).  *See* 11 *Moore's Federal Practice* - Civil §

56.110[2][a]; *see also* § 56.110[2][b] (evidentiary hearings on summary judgment

"may be worse than unnecessary[.]"), § 56.110[2][c] ("evidentiary hearings are

usually inappropriate on a summary judgment motion . . . ," although there may be

"unusual circumstances" in which they occur).  In the end, as here:

> Although evidentiary hearings are permitted in some cases to determine
> whether there is a genuine dispute as to a material fact . . . , evidentiary
> hearings on summary judgment motions are inappropriate in most
> circumstances.  Evidentiary materials in support of and in opposition to the
> motion should be submitted by the parties and made part of the record . . . ,
> and it is on this record that the court should ordinarily decide the motion.

*Id*., § 56.110[2][b] (internal citations omitted).  In the instant matter, I find that

Defendants have not carried their evidentiary burden, as described more fully

below.

## ii.    Indicia of sending and receipt

Also in their reply, the MDOC Defendants contend that Plaintiff's submitted

documents (*see* ECF No. 1, PageID.30-43; ECF No. 22, PageID.149-160) "show

inconsistencies that undermine Prince's arguments."  (ECF No. 24, PageID.169.)

The Court acknowledges the MDOC Defendants' observations that:  (a) Plaintiff's

"four unanswered grievances, two kites, and August 2022 grievance" do not bear

any indication that "[Plaintiff] actually sent them to the MRF grievance office" or

that "the MRF grievance office actually received them[,]" (ECF No. 24,

PageID.169); (b) Plaintiff does not offer "any documentary evidence, that he did not generate himself, to corroborate his claims that he submitted these grievances and kites[,]" (*id*., PageID.170); (c) MRF-1637 & MRF-1794 "did not exhaust any claims[,]" (*id*., PageID.170-171); (d) the four unanswered July 24, 2022 grievances, each of which bears a July 18th or July 19th "date of incident," (ECF No. 1, PageID.36-40), provide more than the names missing in MRF-1637 and MRF-1974, thereby calling into question "how Prince came to acquire the information . . . in the amount of time between the two filed grievances and the four unanswered grievances[,]" (ECF No. 24, PageID.171-172); and, (e) the differing signatures on documents allegedly "filed" or "completed" within "a few weeks of each other[,]" (*id*., PageID173). And, with respect to Prince's response to MDOC Defendant McKinney's motion (ECF No. 54), McKinney contends it "offers no more than conclusory arguments that he was thwarted from exhausting his administrative remedies." (ECF No. 57.)

### (a)    MRF-1637 & MRF-1794

Still, there are factual disputes. As for the two processed grievances, the Court questions the considerable length between the "Today's Date" and "Date Received at Step I." Preliminarily, Plaintiff maintains MRF-1637 and MRF-1794 were filed on July 20, 2022. (ECF No. 22, PageID.141.) However, as described above, while these grievances each bear a July 20, 2022 "date of incident," the

Court notes these grievances were purportedly completed on "today's date," *i.e.*, July 23, 2022 and July 24, 2022.  (ECF No. 1, PageID.30, 33.)

Yet, the few-day gap between July 20 and July 23 or 24 is somewhat of a red herring, because even a filing date of July 24th was likely timely under MDOC PD 03.02.130 ¶ Q (effective Mar. 18, 2019).  (ECF No. 19-2, PageID.108.)  The real concern is the gap between July 20, 23, or 24 and the date these grievances were stamped received at Step I.  The MDOC Defendants respond that "MRF-1637 & MRF-1794 were not filed on July 20, 2022," because they were received and, consequently, filed on August 2 and August 19, 2022, respectively.  (ECF No. 24, PageID.170.)  *See* MDOC PD 03.02.130 ¶ T ("Grievances and grievance appeals at all steps shall be considered filed on the date received by the Department.  All grievances and appeals shall be date stamped upon receipt.") (ECF No. 19-2, PageID.108.)  Put another way, MRF-1637 was dated July 23rd but stamped received *10 days later* on August 2nd, and MRF-1794 was dated July 24th but stamped received *26 days later* on August 19th.  (ECF No. 1, PageID.30-35.)

The MDOC Defendants speculate that Plaintiff either completed them "on or around July 24, 2022, and delayed in submitting them[,]" or "at a later date and mis-dated them."  (ECF No. 24, PageID.170.)  While these are possibilities, there is another possibility – that the MDOC is responsible for the delay in processing MRF-1637 and MRF-1794, whether such delay is intentional or unintentional.

Furthermore, once acknowledged as received, several days passed before these grievances were rejected. MRF-1637, which was stamped received on August 2nd, was not rejected as untimely until *6 days later* on August 8th (ECF No. 1, PageID.33, 35), and MRF-1794, which was stamped received on August 19th, was not rejected as vague until *16 days later* on September 4th (ECF No. 1, PageID.30, 32).

### (b)   Four "replacement" grievances

Yet, even if the Court assumes Plaintiff willingly abandoned the two processed and rejected grievances (MRF-1637 and MRF-1794), the Court also wonders what happened with the four "replacement" grievances (ECF No. 1, PageID.36-40), which purportedly accompanied Plaintiff's July 24, 2022 letter to the MRF Grievance Coordinator (*id.*, PageID.43). Perhaps Plaintiff sent the July 24th letter, because he knew that "[a] grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy[,]" and "[a] new grievance shall not be filed regarding the rejection." MDOC PD 03.02.130 ¶ I (ECF No. 19-2, PageID.106.) For all this Court knows, Plaintiff's subsequent August 19, 2022 letter to the MRF Grievance Coordinator concerning "failure to process previously filed grievances on [July 24, 2022][,]" (*see id.*, PageID.42), may have been an impetus for the MDOC to stamp MRF-1794 as received on August 19, 2022 (*id.*, PageID.30, 32). If so, and considering the August 19th letter

mentioned "4 new correctly written grievances enclosed with the [July 24th] letter . . . [,]" (*id.*, PageID.42), it is possible the MDOC selectively responded to MRF-1794, in which case the Court wonders why the MDOC did not also in some way address the four grievance forms.

Plaintiff claims Defendants decided not to answer his "new" grievances and "obstructed" his right of access to the courts, thereby rendering the administrative grievances process unavailable. (ECF No. 22, PageID.142-143.) He claims that, due to prison officials' intimidation and obstruction, he could not move past Step I, because there was "no response from [the] Grievance Coordinator." (*Id.*, PageID.146). Plaintiff makes similar arguments in responding to MDOC Defendant McKinney's motion. (ECF No. 54, PageID.295, 297-300.)[5]

While the MDOC Defendants argue that Plaintiff "does not show that he sent in or that [the] MDOC ever received the unanswered grievances and kites[,]" (ECF No. 24, PageID.169-170), it is also possible, as Plaintiff states in his verified complaint, that these grievances "were never processed by the Grievance

_____

[5] In response to MDOC Defendant McKinney's motion for summary judgment (ECF No. 52), Plaintiff also seems to question whether the procedural rule at issue is "critical," as contemplated by *Woodford*, 548 U.S. at 90. (ECF No. 54, PageID.296.) In so doing, he seems to refer to the idea that "prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits." *Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017); however, the grievances upon which Plaintiff relies in this case were not addressed on the merits.

Coordinator." (ECF No. 1, PageID.24.) And, the MDOC Defendants do not argue that Plaintiff failed to "request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator . . . . within ten business days after the date the response was due . . . ." MDOC PD 03.02.130 ¶ DD (ECF No. 19-2, PageID.110.)

In the end, the Court must make a decision based on the evidence before it, which includes Plaintiff's verified complaint and its exhaustion-related attachments (ECF No. 1) and the relevant MDOC policy (ECF No. 19-2), as well as the Step III Grievance Affidavit, Step III Grievance Report, and Grievance attached to the MDOC Defendants' motion (ECF No. 19-3). Among the evidence are: (1) an unprocessed grievance naming Simmet, Perry, Sheffield, Frangedakis, Brown, Hernandez, Droste, *et al.* (ECF No. 1, PageID.38); and, (2) another unprocessed grievance naming "the MRF employ[ee] working the AM shift[,]" *i.e.*, the "shift commander in the control center," (*id.*, PageID.39), which is presumably a reference to John Doe #5 (*id.*, PageID.4), who has since been identified as McKinney (*see* ECF No. 41). Consideration of this evidence raises more questions than it answers, and reveals a "genuine dispute as to any material fact . . . [,]" Fed. R. Civ. P. 56(a), namely whether Plaintiff's exhaustion efforts to submit his "replacement" grievances —were "obstructed," thereby rendering the

administrative grievance process unavailable as to his claims against these eight

MDOC Defendants.

### d.      Wellpath Defendant Farris (ECF No. 64)

With respect to Plaintiff's submission of unexhausted grievances (*see* ECF

No. 1, PageID.30-41; ECF No. 22, PageID.149-158), Wellpath Defendant Farris

contends these "do not and cannot prove exhaustion for several reasons." (ECF

No. 64, PageID.343-345.)  Similar to the MDOC Defendants' arguments:

- Farris notes the grievance identifiers are missing and asserts the grievance coordinator would have assigned one if the grievances were received at Step I.  MDOC PD 03.02.130 ¶ X ("The Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those that may be rejected.  A computerized grievance tracking system shall be used for this purpose.") (ECF No. 64-1, PageID.352.)

- Farris contends "there is no admissible evidence that Plaintiff ever submitted these grievances to the Step I coordinator[,]" because the "date received at Step I" is blank, there is no response either addressing on the merits or rejecting the grievances, and there are no signatures from the Grievance Coordinator or the supervisor.  *See* MDOC PD 03.02.130 ¶ Y (ECF No. 64, PageID.352).

- Farris notes that "Plaintiff did not appeal these grievances to Step III[,]" (*see* ECF No. 19-3, PageID.116-117), and supports this point by acknowledging MDOC Grievance Section Manager Richard D. Russell's sworn statement in an unrelated case, purportedly reflecting that "[a]ny grievances which were not logged on the Step III Grievance Report 'were never received at the Grievance Section,' and are therefore not fully exhausted under the Grievance Policy."  *Owusu v. Michigan*

> *Dep't of Corr. Pain Mgmt. Comm.*, No. 16-CV-12490, 2019
> WL 4627585, at *3 (E.D. Mich. Sept. 24, 2019) (Levy, J.).

(ECF No. 64, PageID.343-345.)  Asserting that Plaintiff cannot provide evidence

of *either* submitting grievances to the Step I grievance coordinator *or* mailing the

grievances to the Grievance Section in Lansing, Michigan (*id.*, PageID.345),

Defendant Farris concludes that Plaintiff did not file any grievances against her

"for her alleged failure to provide Plaintiff with a wheelchair, ADA compl[ia]nt

cell, or proper pain medications[,]" (*id.*, PageID.346).

    In an unverified response, Plaintiff contends "it is to[o] easy for prison

officials to obstruct the rights of a prisoner simply by not responding to the

prisoner[']s first step grievance form."  (ECF No. 66, PageID.359 ¶ 3.)  Put another

way, Plaintiff contends that, when the MDOC or medical "wants to avoid a

lawsuit[,]" they "simply 'ignore'" the Step I grievance by not responding, not

signing, and not assigning a grievance identifier number.  (*Id.*, PageID.360 ¶ 8.)

And, as he similarly responded to the MDOC Defendants' motion (*see* ECF No.

22, PageID.143), Plaintiff again responds that obstruction of exhaustion efforts by

prison staff "does not bar the prisoner from proceeding with a subsequent lawsuit."

(ECF No. 66, PageID.359-361 ¶¶ 11-12.)[6]

---

[6] In response to Wellpath Defendant Farris's motion for summary judgment (ECF No. 64), Plaintiff also seems to question whether the procedural rule at issue is "critical," as contemplated by *Woodford*, 548 U.S. at 90.  (ECF No. 66, PageID.361 ¶ 13.)

In her reply, Defendant Farris characterizes Plaintiff's argument as contending "his failure should be excused because he was prevented from exhausting his available administrative remedies because he never received a response to his Step I grievances." (ECF No. 68, PageID.368.)  This Court was previously presented with an argument that a plaintiff "did in fact file a Step I grievance but that it was not processed due to staff interference, as often authority figures within administration disregard legitimate grievances to put potential plaintiffs in position to fail the exhaustion requirement." *Durden v. Lopez*, No. CV 22-10398, 2023 WL 2950602, at *4 (E.D. Mich. Jan. 17, 2023) (Grand, M.J.) (quotations and citations omitted), *report and recommendation adopted*, No. 22-10398, 2023 WL 2537279 (E.D. Mich. Mar. 16, 2023) (Cox, J.).  Determining that the argument lacked merit, the Court explained:

> A prisoner cannot overcome a properly-supported summary judgment motion simply by asserting that the grievance process was "unavailable."  Rather, as in all cases, the prisoner must make an affirmative showing with proper evidence to at least raise a material question of fact on the issue.  *Alexander [v. CareSource]*, 576 F.3d [551][,] 558 [(6th Cir. 2009)] (internal quotations omitted).  Because it is undisputed that Durden did not exhaust any relevant grievances, the issue here is *whether Durden presented sufficient evidence to raise a material question of fact that he made reasonable efforts to exhaust the grievance process, but that the process was "unavailable" to him*.

*Durden*, 2023 WL 2950602, at *5 (emphasis added).

Farris maintains that "Plaintiff has not provided any <u>sufficient</u> evidence to raise a material question of fact as to whether the grievance process was

unavailable to him." (ECF No. 68, PageID.369 (emphasis in original).)  More

specifically, Farris contends there is no evidence that Plaintiff:  (1) "submitted any

of the unanswered Step I grievances to the coordinator as required by MDOC PD

[03.02].130[;]" (2) "did not fill out these grievances concurrently while drafting his

Complaint[,]" (*id*.); ; or, (3) "submitted [the July 24th and August 19th letters] to the

grievance coordinator[,]" (*id*.)  Yet, in his verified complaint, Plaintiff alleges these

grievances "were never processed by the Grievance Coordinator[,]" (ECF No. 1,

PageID.24), Plaintiff attaches copies of these grievances to the verified complaint

(*id*., PageID.36-41), and he also attaches copies of the July 24th and August 19th

letters, the former mentioning "four newly and correctly written enclosed

grievances[,]" and the latter mentioning "4 new correctly written grievances

enclosed . . . [,]" (*id*., PageID.42-43).  This is enough to create material fact

disputes, such as the dates the four new grievance forms were completed and

whether these documents or Plaintiff's two letters are missing indicia of receipt

because Plaintiff did not submit them or because the MDOC Defendants failed to

process them?

Finally, the Court acknowledges Farris's observation that Plaintiff's August

19, 2022 letter (ECF No. 1, PageID.42) does not request a Step II grievance form

as set forth in MDOC PD 03.02.130 ¶ DD.  (ECF No. 68, PageID.370.)  On this

point, Farris compares this case to one where the Plaintiff made "numerous

requests . . . in an effort to obtain the appropriate form . . . [,]" which were considered evidence of "attempting to comply with MDOC policy where the prison was not[,]" *Young v. Jackson*, No. 12-CV-12751, 2013 WL 8178397, at *9 (E.D. Mich. Nov. 13, 2013) (Majzoub, M.J.), *report and recommendation adopted in part*, No. 12-12751, 2014 WL 1304605 (E.D. Mich. Mar. 31, 2014) (Tarnow, J.), Still, even if the August 19th letter did not request a Step II grievance form, and merely "ask[ed] for his step I grievances to be resubmitted[,]" (ECF No. 68, PageID.370), the letter was clearly intended to follow up on the July 24th letter, as it is labeled "failure to process previously filed grievances on [July 24, 2022][.]" (ECF No. 1, PageID.42.)  If, as Plaintiff contends in his verified complaint, he "sent letters to MRF's Grievance Coordinator requesting Step II appeal forms for grievances listed as Attachments C-G[,]" (*id*., PageID.25), which appear to include the four "replacement grievances," (*id*., PageID.36-40), the Court must assume this to be true at this stage of the proceedings.

    In the end, the Court must make a decision, on a case-by-case basis, on the evidence before it, which here includes Plaintiff's verified complaint and its exhaustion-related attachments (ECF No. 1) and the relevant MDOC policy (ECF Nos. 19-2, 64-1), as well as the Step III Grievance Affidavit, Step III Grievance Report, and the Grievance attached to the MDOC Defendants' motion (ECF No. 19-3), some of which is cited by Wellpath Defendant Farris (*see* ECF No. 64,

PageID.339, 344).  Consideration of this evidence reveals a "genuine dispute as to [the] material fact" of whether Plaintiff's exhaustion efforts to submit his "replacement" grievances – significantly here the one naming Farris, *et al*. (ECF No. 1, PageID.36) – were "obstructed," thereby rendering the administrative grievance process unavailable as to his claims against Wellpath Defendant Farris. Put another way, contrary to Farris's assertion, Plaintiff has "presented sufficient evidence to raise a material question of fact that he made reasonable efforts to exhaust the grievance process, but that the process was 'unavailable' to him." *Durden*, 2023 WL 2950602, at *5.  (ECF No. 68, PageID.370.)

### D.    Conclusion

As set forth in detail above, Defendants are not "entitled to judgment as a matter of law[,]" because there exists a "genuine dispute as to any material fact . . . [,]" Fed. R. Civ. P. 56(a), namely whether Plaintiff has exhausted his *available* administrative remedies in accordance with 42 U.S.C. § 1997e(a).  Accordingly, the Court should **DENY** the exhaustion-based motions for summary judgment filed by the MDOC Defendants (ECF Nos. 19, 52) (*see* Section II.C.2.c) and **DENY** the exhaustion-based motion filed by Wellpath Defendant Farris (ECF No. 64) (*see* Section II.C.2.d).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: February 14, 2024

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE